### PEOPLE v RUTHERFORD

Docket No. 71497. Submitted August 21, 1984, at Detroit.—Decided January 23, 1985.

David G. Rutherford was convicted of armed robbery following a jury trial in Monroe Circuit Court, James J. Kelley, J. Defendant was sentenced to a prison term of from 20 to 40 years. Defendant appealed, asserting as error the trial court's admission into evidence of defendant's confession and certain photographs of the victim taken after the crime, the trial court's instructions relative to the dangerous weapon and assault elements of the crime, and the excessive length of his sentence. *Held:*

1. The trial court properly admitted the confession secured during defendant's prearraignment detention, since the evidence supports the trial court's determination that the confession was voluntarily made by defendant after defendant had been fully apprised of his rights. It is clear that the delay in defendant's arraignment was not used as a tool to extract the confession; accordingly the confession should not be excluded on the ground of any delay in the arraignment of the defendant.

2. Since the photographs of the victim were relevant to

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence §§ 543, 547.

Admissibility of pretrial confession in criminal case—Supreme Court cases. 1 L Ed 2d 1735, 4 L Ed 2d 1833, 12 L Ed 2d 1340.

Admissibility of confession or other statement made by defendant as affected by delay in arraignment—modern state cases. 28 ALR4th 1121.

[2] 6 Am Jur 2d, Assault and Battery §§ 48, 53.

29 Am Jur 2d, Evidence §§ 786, 787, 790.

[2, 5] 67 Am Jur 2d, Robbery §§ 4, 7.

[3] 5 Am Jur 2d, Appeal and Error §§ 623, 891.

75 Am Jur 2d, Trial § 713.

[4] 67 Am Jur 2d, Robbery § 4 *et seq.*

[5] 67 Am Jur 2d, Robbery §§ 15, 16, 21, 26.

[6, 7] 5 Am Jur 2d, Appeal and Error § 938.

20 Am Jur 2d, Courts § 85.

21 Am Jur 2d, Criminal Law § 538.

establishing that the armed robbery involved an aggravated assault or a serious injury, thereby establishing a basis for imposition of a sentence provision of the armed robbery statute, and were not so gruesome as to be prejudicial, the trial court did not abuse its discretion in admitting the photographs into evidence.

3. The trial court properly instructed the jury that the dangerous weapon element would be satisfied if they found that the defendant was armed with an article which was used in a manner to induce the reasonable belief that the article was a dangerous weapon. The displaying of the handle of a folding knife, coupled with defendant's threat to cut the victim's throat, was sufficient to satisfy the dangerous weapon element even though the victim never saw the knife's blade.

4. The trial court's instruction that the time of the assault was immaterial as long as the defendant had the intent to steal at the time of the assault was a proper instruction under the facts in this case.

5. Since defendant's sentencing took place prior to the adoption of the mandatory sentencing guidelines, review of the sentence imposed is limited to whether the sentence shocks the conscience of the reviewing court. While the sentence is higher than that now recommended by the guidelines, it is not so high as to shock the conscience of the Court.

Affirmed.

SHEPHERD, P.J., concurred. While he found that the sentence imposed did not shock his conscience, he would hold that, without further guidance by the Supreme Court, the danger of arbitrary and disparate sentences has not been eliminated, since the "conscience" of appellate judges is not inherently a better gauge than the "discretion" of trial judges.

OPINION OF THE COURT

1. CRIMINAL LAW — PRETRIAL PROCEDURES — PREARRAIGNMENT DE-
   TENTION — CONFESSIONS.
   A confession made during prearraignment detention should not be excluded at trial because of a delay in arraignment unless the delay in arraignment was used as a tool to extract a confession (MCL 764.13, 764.26; MSA 28.871[1], 28.885).

2. CRIMINAL LAW — EVIDENCE — PHOTOGRAPHS — ARMED ROBBERY.
   A trial court may properly admit photographs of an armed robbery victim taken after the crime where the photographs are not so gruesome as to be prejudicial and, although not relevant to the elements of armed robbery, they are relevant to

establishing that the armed robbery was accomplished by an aggravated assault so as to bring the crime within the specified sentence provision applicable where aggravated assault or serious injury is inflicted in the course of the armed robbery (MCL 750.529; MSA 28.797).

3. Appeal — Criminal Law — Jury Instructions.

Reversible error may be found in the absence of an objection at trial where the charge to the jury omits an essential element of the offense.

4. Robbery — Armed Robbery — Weapons.

The dangerous weapon element of armed robbery is satisfied where the person possesses an article which is in fact a dangerous weapon or an article which is used in a manner to induce the reasonable belief that it is a dangerous weapon (MCL 750.529; MSA 28.797).

5. Robbery — Armed Robbery — Assault — Taking.

The assault element of an armed robbery need not be contemporaneous with the taking of the property so long as at the time of the assault the defendant had the intent to steal and the assault was used to accomplish the taking; accordingly an assault which occurs after the taking but which prevents the victim from retaining his or her property satisfies the assault element necessary to convict for armed robbery (MCL 750.529; MSA 28.797).

6. Criminal Law — Sentencing — Appeal.

A sentence imposed prior to March 1, 1984, the date the use of the sentencing guidelines became mandatory, which is higher than that recommended by those guidelines is subject to appellate review only to the extent that the sentence imposed constituted such an abuse of the trial court's sentencing discretion that it shocks the conscience of the appellate court.

Concurrence by Shepherd, P.J.

7. Criminal Law — Sentencing — Appeal.

*Appellate review of criminal sentences will result in the goal of more rational and uniform sentencing only when the Court of Appeals has been given standards which remove sentence review from the same nebulous and arbitrary criteria which exist in the trial courts; substituting the "conscience" of appellate judges for the "discretion" of trial judges does not eliminate the risk of imposing arbitrary and disparate sentences but rather merely shifts that risk from the trial courts to the appellate court.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Michael W. LaBeau,* Prosecuting Attorney, and *William D. Bond,* Assistant Prosecuting Attorney, for the people.

*Czeryba, Dulany & Godfroy* (by *William P. Godfroy),* for defendant.

Before: SHEPHERD, P.J., and MacKENZIE and P. NICOLICH,* JJ.

P. NICOLICH, JJ. Following a jury trial, defendant was convicted as charged of armed robbery, MCL 750.529; MSA 28.797. He was sentenced to prison for 25 to 40 years, and appeals as of right.

Defendant first argues that the trial court erred in finding that his prearraignment statement was voluntary and admissible. Defendant was arrested on Friday evening, July 16, 1982, and arraigned on Monday, July 19, 1982. On July 18, at about 6:00 p.m., after a detective talked with the defendant and had informed him of his *Miranda*[1] rights, the defendant agreed to make both a verbal and a taped statement. Both defendant's mother and sister testified that they attempted to see defendant in jail over the weekend but were denied access. Defendant, as well as other witnesses, testified that, just prior to his arrest, defendant consumed a large quantity of beer and consumed 1-1/4 grams of "THC". Defendant did not recall making a recorded statement. The trial court compared defendant's taped statement with the account of the victim to determine if defendant was hallucinating when he made his statements. The court found defendant's description of the events

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

"practically identical" to the description related by the victim.

MCL 764.13; MSA 28.871(1) and MCL 764.26; MSA 28.885 prohibit unnecessary delays between arrests and arraignments. A confession made during prearraignment detention should not be excluded unless the delay was used as a tool to extract a confession. *People v Stinson,* 113 Mich App 719, 730; 318 NW2d 513 (1982). There is no indication that delay in this case was used as a tool to extract a confession. Rather, considering the large amounts of drugs and alcohol defendant had consumed, it was reasonable to wait until he had recovered from the effects of those drugs before arraigining him. Furthermore, the detective fully complied with *Miranda.* We have no doubt that the court correctly determined that defendant's statement was voluntary. *People v McGillen #1,* 392 Mich 251, 257; 220 NW2d 677 (1974).

Defendant next contends that the trial court should not have admitted into evidence photographs of the victim taken after the crime, because they were irrelevant and prejudicial. The trial court ruled that the photographs were probative of the issue of the complainant's credibility and that they were not so gruesome as to be prejudicial. Although the photographs were irrelevant as to the elements of armed robbery, they established that the complainant had been injured sufficiently to bring the crime within the statute providing for a two-year minimum if an aggravated assault or serious injury is inflicted in the course of an armed robbery, as the prosecutor argued. MCL 750.529; MSA 28.797. This Court has upheld admission of photographs under similar circumstances. *People v Jackson,* 119 Mich App 138; 326 NW2d 392 (1982). It was not reversible error in this case to admit the photographs.

Defendant next challenges the trial court's instructions on the dangerous-weapon element of armed robbery. The trial court's instruction was substantially the same as CJI 18:1:01. Defendant made no objection at trial. Reversible error may be found in the absence of an objection where the charge omits an essential element of the offense. *People v Rivera,* 120 Mich App 50; 327 NW2d 386 (1982). The evidence at trial indicated that defendant had a folding knife, showed the victim the six-inch handle of the knife, and threatened to cut her throat. Although she did not see the blade, we think this was sufficient evidence to satisfy the armed robbery statute. The defendant certainly used the knife in a manner to induce the reasonable belief that the knife was indeed a dangerous weapon. *People v Parker,* 417 Mich 556, 565; 339 NW2d 455 (1983), *cert den* — US —; 104 S Ct 2180; 80 L Ed 2d 561 (1984).

Defendant also contends that the trial court erred in instructing the jury that the exact time at which the victim was assaulted was immaterial as long as defendant had the intent to steal her money at the time of the assault. Defendant argues the assault did not occur until after he had found the money in the victim's purse. This argument is without merit, as defendant's assault of the victim prevented her from regaining her purse. *People v LeFlore,* 96 Mich App 557, 561; 293 NW2d 628 (1980), *lv den* 409 Mich 927 (1980).

Finally, defendant argues that his sentence was excessive, in light of the fact that he is a 17-year-old first-time adult offender. Defendant suspects the trial court wrongly relied on his juvenile record since he was without counsel during one of his two breaking and entering juvenile convictions.

The sentencing judge commented that an armed robbery of "a little old lady living alone in her

house * * * should be discouraged". He said he was imposing the sentence for defendant's own rehabilitation and for the protection of the community. The presentence report referred to both juvenile convictions, although defendant recalled only one, and it is unclear whether the judge relied on them in passing his sentence.

Defendant was sentenced prior to *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983), so the trial judge was not required to state specific reasons for the length of the sentence he imposed. The reasons which the judge did give are in accord with the criteria set forth in *Coles* to be used in determining an appropriate sentence. 417 Mich 550.

Defendant's sentence was higher than that recommended by the sentencing guidelines, but the guidelines were not mandatory at the time of defendant's sentence. Defendant's sentence is high, but it does not shock our conscience and, according to *Coles,* our review of sentences is limited to determining whether the trial court abused its discretion to the extent that it shocks our conscience. *Coles, supra,* p 550.

Affirmed.

MACKENZIE, J., concurred.

SHEPHERD, P.J. *(concurring).* I join this Court's majority opinion on all issues except the sentencing question, and agree that the conviction should be affirmed. I also concur in the result on the sentencing issue. However, I write separately to urge the Supreme Court to provide more specific guidance as to how sentences should be considered and reviewed by this Court in light of *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983).

In *Coles,* p 550, the Supreme Court directed this

Court to grant relief "only if [it] finds that the trial court, in imposing the sentence, abused its discretion to the extent that it shocks the conscience of the appellate court". The Supreme Court indicated it was concerned with two forms of abuse, namely excessive sentences and sentences which are unjustifiably disparate in length from those generally imposed in like cases. It defined the "excessively severe sentence" as "one which far exceeds what all reasonable persons would perceive to be an appropriate social response to the crime committed and the criminal who committed it". *Coles,* pp 542-543. The Supreme Court further stated "that disparity in sentences which results from considerations such as the race or economic status of a defendant *or the personal bias and attitude of an individual sentencing judge* is unjustified and impermissible". (Emphasis added.) *Coles,* p 546.

My concern is that the present framework of sentence review provides no surer means of curing such abuses than existed prior to *Coles, supra.* Reliance upon the "conscience of the appellate court" will not result in justice evenly applied across the state, for we, like members of society generally, vary in what our consciences dictate.

In actuality, this Court has tended to review *Coles* issues in a seemingly narrow fashion, so that the case is rare, indeed, when relief is granted, and the relief that is granted is limited to a remand. *Coles,* pp 550-551. Hence, the sentencing decision nearly always remains, as it did before, in the hands of the trial courts and is subject to the same abuses at which the Supreme Court took aim in *Coles.* On the other hand, if this Court were to assume a more dynamic posture in these matters, consistency might be equally lacking, owing to our

own individual philosophies regarding treatment of offenders. We need more guidance.

The Supreme Court has ordered application of the sentencing guidelines. Administrative Order 1984-1, 418 Mich xxiv. In its order, the Court stated its purposes as (1) evaluation of the guidelines themselves, and (2) "to facilitate judicial review" pursuant to *Coles, supra.* The trial courts are directed to state their reasons for imposing sentences outside the minimum range recommended by the guidelines. 418 Mich xxiv. Thus, it is clear that the guidelines are subject to revision and, therefore, cannot be viewed as setting the outer limits of a sentencing judge's discretion.

If the guidelines did set binding limits on the trial court's discretion, I would be constrained to remand when the judge states reasons for departing from the guidelines which are already considered therein. The problem we face in these cases is that the guidelines include factors such as the severity of the offense, the past record of the defendant, and the sentences historically imposed throughout the state. If the trial judge justifies a departure from the guidelines by stating that he does so because of the nature of the offense and the record of the offender, the trial court has considered these factors twice. If we say that the trial judge may, in an individual case, place greater emphasis on any given factor by simply announcing on the record his intention to do so, the guidelines become nothing more than a litany of magic words used to mask the imposition of subjective, arbitrary and disparate sentences—the very problem which *Coles* and the guidelines were designed to eliminate. If the sentencing judge is not held to have abused his discretion by emphasizing a factor already included in the guidelines as a basis for departing from them, and if the record is devoid of evidence showing whether a

sentence beyond the guidelines is disparate,[1] we are furnished with no basis other than our own subjective reactions upon which to base a decision. The risk of imposing an arbitrary and disparate sentence is thus shifted from the trial courts to the Court of Appeals.

At the same time, if there is a lack of any direct connection between the guidelines and *Coles* review, we are left with insufficient means to evaluate the relative excessiveness of the sentences before us. If we cannot rely upon the guidelines to help form a more educated appellate "conscience", we are left again in a realm of subjectivity, "with confidence in the criminal justice system correspondingly diminished". *Coles,* p 542.

In this case, therefore, I can only follow my subjective impression of the offense and the offender. In my personal view, the crime is serious enough and the criminal sufficiently hardened to warrant the sentence imposed. However, like Judge KELLY, dissenting in *People v Landis,* 139 Mich App 120; 361 NW2d 748 (1984), I confess to not knowing "how sensitive, informed and rational my conscience is". More importantly, *Coles* and the guidelines were designed to minimize the impact of a judge's personal conscience and to create a more rational and uniform basis for sentencing. We should not labor under the illusion that this has been accomplished. In fact, it will never be accomplished until the Court of Appeals has been given standards to apply which remove sentence review from the same nebulous and arbitrary criteria which still exist in the trial courts. It is one thing to say that trial and appellate courts

[1] I would presume that a sentence beyond the guidelines is disparate since the guidelines already take disparity into account. In any event, the record on appeal does not furnish us with any data to establish this factor and we do not do independent factual research beyond the record.

must be given a degree of flexibility so that each case may be adapted to its circumstances; it is quite another to base that flexibility upon a foundation no more solid than the personal consciences of individual judges.

I respectfully invite the Supreme Court to grant leave in the present case and help us resolve these fundamental difficulties in sentence review.